*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

FARMINGTON SQUARE CONDOMINIUM
ASSOCIATION,

        Plaintiff/Counterdefendant-Appellee,

v

KEITH MITAN,

        Defendant/Counterplaintiff-Appellant,

and

KEITH MITAN, Personal Representative for the
Estate of Frank J. Mitan, UNKNOWN TENANTS
& OCCUPANTS, and MARK WINGFIELD,

        Defendants,

and

DEBORAH VANDEVER, BELAYET HOSSAIN,
RICHARD JOHNSON, and TRACEY MILLMAN,

        Counterdefendants-Appellees.

UNPUBLISHED
August 11, 2025
11:34 AM

No. 366946
Oakland Circuit Court
LC No. 2020-185297-CH

Before: PATEL, P.J., and RIORDAN and SWARTZLE, JJ.

PER CURIAM.

Defendant Keith Mitan ("Mitan"), *in pro per*, appeals as of right the trial court's final order awarding plaintiff Farmington Square Condominium Association ("the Association") $24,086.10 in attorney fees and costs. On appeal, Mitan challenges that final order, as well as the trial court's earlier respective orders enjoining him and others from engaging in certain conduct, granting summary disposition in favor of the Association and denying his motion for summary disposition, and granting summary disposition in favor of the individual counter-defendants Deborah

-1-

Vandever, Belayet Hossain, Richard Johnson, and Tracey Millman ("the counter-defendants"). We affirm the trial court in nearly all respects, but remand to that court to reduce the fees award by the amount awarded for paralegal fees and to consider the possible increase of the fees award by the amount incurred by the Association for defending against this appeal.

## I. FACTS

This case is about a condominium unit in the Association complex and two parallel proceedings in the trial court, LC No. 2018-165641-CZ, and the instant case, LC No. 2020-185297-CH. Briefly stated, Mitan is the son of Frank Mitan, Jr., who died in 2010. Frank Mitan originally owned the unit at issue, and title passed to his estate after his death. Mitan represented the estate for several years and, in 2018, he initiated a case against the Association in LC No. 2018-165641-CZ. In that case, Mitan raised various claims against the Association, none of which proceeded beyond the summary-disposition stage. In addition, the Association filed a counterclaim against Mitan, seeking to foreclose a lien for unpaid condominium assessments. The trial court dismissed Mitan's claims but ruled in favor of the Association on its counterclaim. On appeal, this Court affirmed the dismissal of Mitan's claims but reversed the foreclosure judgment in favor of the Association, given a jurisdictional issue between the probate court and the trial court, as well as the fact that Mitan engaged in the unauthorized practice of law by representing the estate. See *Mitan v Farmington Square Condo Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2021 (Docket No. 350053).

In March 2021, a few weeks after this Court's opinion, Mitan transferred title to the unit from the estate to himself. The trial court then, once again, dismissed Mitan's claims against the Association and entered judgment in favor of the Association on its counterclaim for foreclosure of a lien for unpaid condominium assessments. In particular, the trial court determined that the Association was entitled to a total lien amount of $36,319.62, which included delinquent assessments and various costs, including attorney fees as authorized by contract and statute. In July 2024, this Court affirmed the trial court in all respects. *Mitan v Farmington Square Condo Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued July 25, 2024 (Docket No. 364595). In February 2025, our Supreme Court denied leave to appeal, *Mitan v Farmington Square Condo Ass'n*, ___ Mich ___; 16 NW3d 728 (2025), thus concluding the proceedings in LC No. 2018-165641-CZ.

Turning to the instant case, LC No. 2020-185297-CH, in December 2020, the Association filed its complaint against Mitan and "Unknown Tenants and Occupants," alleging as follows. Mitan, the personal representative of the estate of Frank Mitan, is the title holder of a unit in the condominium association, having recently received title after Frank Mitan passed away.[1] Mitan currently leases the unit to "Unknown Tenants and Occupants." Mitan has not provided the tenants' information to the Association, contrary to Article VI, Section 2(b)(1) of the Association's bylaws, which provides that "Co-owners shall provide to the Association all information on the tenant(s) as the Association may require." On December 10, 2020, the Association mailed to the tenants a "rent diversion letter" instructing the tenants to remit their rent directly to the Association,

---

[1] At the time the complaint was filed, Mitan held title in his capacity as personal representative of the estate. As noted, in March 2021, Mitan transferred title to himself in his personal capacity.

as Mitan owes the Association a substantial amount of money in unpaid assessments. That letter was authorized by the bylaws and MCL 559.212(5). According to the Association, however, Mitan has refused to identify his tenants in an attempt to avoid the Association's rent diversion. Consequently, the Association sought an injunction from the trial court that would, in relevant part, "enjoin[] Mitan from . . . interfering with the Association's statutorily authorized right to demand tenants of Co-owners pay their rent to the Association when the Co-owner is in arrears, as Mitan is now." The Association sought monetary damages, including attorney fees and costs, as well.

In August 2021, the Association filed an amended complaint, adding Mitan as a party in his personal capacity and adding Mark Wingfield, a suspected tenant, as well. The amended complaint reiterated that Mitan has refused to supply the Association with his tenants' information, and it continued to seek an injunction that would direct the tenants to remit their rent directly to the Association.

In October 2021, Mitan filed a "first amended counterclaim" against the Association and counter-defendants Deborah Vandever, Belayet Hossain, Richard Johnston, and Tracy Millman, each of whom were current or former members of the Association's board of directors. The first amended counterclaim identified nine separate counts against the Association and these individuals. Relevant for the purposes of this appeal, Count IV alleged that the Association violated MCL 559.163 by "intentionally preventing [his] access to . . . the utility lines and equipment which are included in the Condominium Project," and Count VI alleged that the Association violated Article X, Section 4(g) of the bylaws because it allowed a lien to be recorded against condominium property without compliance with that provision. More specifically, with regard to Count IV, the record indicates that in November 2020, the Association denied him access to "building C . . . for AT&T" because he was "in collections and also in violation of the leasing procedures," but that in January 2021, the Association circulated a letter to all co-owners stating that "[e]ffective immediately, all cable and phone rooms have been changed out to non-locking rooms. This will enable the cable contactor and phone companies to have access and not have to set an appointment with management."[2] And, with regard to Count VI, documentary evidence shows that in July 2019, the Association entered into a contract with All Renovations Company to perform maintenance work on the interior hallways of the condominium complex for $68,229; that in June 2020, the company filed a lien against the condominium complex for $69,429; and that in August 2021, the lien was discharged.[3]

The parties filed competing motions for summary disposition. First, Mitan moved for summary disposition of the Association's first amended complaint under MCR 2.116(C)(8) and (C)(10). In the accompanying brief, he argued that (1) the complaint violated MCL 600.3105(2), which essentially concerns res judicata in real-estate proceedings, as "[t]he instant case was filed

---

[2] Apparently, the condominium complex has utility rooms that must be accessed for cable and Internet servicing. Before January 2021, a co-owner would have to schedule an appointment to have the relevant utility room unlocked so it could be temporarily accessed by a utility company. Beginning in January 2021, however, the utility rooms were permanently unlocked.

[3] The lien was filed as a result of a payment dispute that eventually was resolved.

*after the Association had already requested a foreclosure judgment* in another case regarding the subject property"; (2) the complaint violated MCL 559.212(5), as the Association's request for an injunction should have been brought in the district court under that statute; and (3) the complaint violated MCL 450.1501, as the Association's board of directors did not formally authorize the filing of the instant case.

Second, the Association moved for summary disposition of its first amended complaint under MCR 2.116(C)(10). In the accompanying brief, the Association argued that Mitan violated the bylaws by refusing to disclose the tenants' information and lease terms to the Association, that the unknown tenants and occupants violated the bylaws by refusing to remit their rent directly to the Association, and that the Association was entitled to injunctive relief and accompanying attorney fees and costs.

Third, the counter-defendants moved for summary disposition of Mitan's first amended counterclaim under MCR 2.116(C)(10). In their accompanying brief, the counter-defendants argued that each of the nine counts therein was meritless. Specifically, with regard to Count IV, the counter-defendants argued that "[a]ny denial of access before March, 2021 is not actionable" because Mitan was not a co-owner until that time. With regard to Count VI, the counter-defendants similarly argued that "Mitan (as an individual) was not a Co-owner or Association member when the Lien was filed in June, 2020 because the Unit belonged to the Estate." Thus, the counter-defendants argued, the trial court should dismiss the first amended counterclaim.

On January 25, 2023, the trial court conducted a single hearing on the motions for summary disposition. At the conclusion of the hearing, the trial court decided the most straight-forward of the motions. It ruled in favor of the Association and the counter-defendants, granting the Association's motion for summary disposition and the counter-defendants' separate motion for summary disposition. The trial court then explained that it would decide the matter of attorney fees and costs at a separate evidentiary hearing. The same day, the trial court entered an order memorializing its decision on the record granting the counter-defendants' motion for summary disposition and dismissing Mitan's first amended counterclaim.

In March 2023, the trial court considered the remaining issues and entered an order mostly granting the Association's motion for summary disposition and denying Mitan's motion for summary disposition. The order provided for a default judgment against the "Unknown Tenants and Occupants" and a judgment against Mitan, leaving open the question of attorney fees and costs. With regard to the Association's requested injunctive relief, the order stated:

> ¶ 2. Mitan and his agents, servants, employees, and attorneys, and those persons in active concert or participation with him who receive actual notice of this Order, are hereby permanently restrained and forever enjoined from violating the terms and conditions of the Farmington Square Condominium Documents, attached as **Exhibit A** to this Judgment, and shall strictly comply with all applicable provisions of the Condominium Documents concerning leasing.

> ¶ 3. All Unknown Tenants and Occupants of the Unit shall henceforth pay all rent owing to Mitan directly to the Association per the Association's written

instructions until such time as all delinquencies owing on the Unit have been paid pursuant to MCR [sic] 559.212 as well as the Condominium Documents.

¶ 4. Mitan shall immediately provide the Association with copies of any written lease or leases between the Estate or Mitan and the current Unknown Occupants and Tenants, if any exists and are in Mitan's possession, including but not limited to Mark Wingfield, and further disclose any and all additional information regarding the identity of and contact information for the Unknown Tenants and Occupants currently occupying the Unit, and the terms of occupancy, as required by the Association in writing.

¶ 5. Should Mitan fail to comply with this Order, or should the Unknown Occupants and Tenants fail to pay rent to the Association for so long as a delinquency persists at the Unit as ordered above, then the Association may move in this Court for contempt proceedings, and upon a finding of a violation, then any Court Officer who is duly qualified to carry out evictions in Michigan pursuant to court order shall act as Court Officer to carry out the duties and functions of that office relative to this Judgment. . . .

Exhibit A to the order included the master deed and the bylaws for the Association.

Later that month, the trial court held an evidentiary hearing on the Association's request for attorney fees and costs. At the conclusion of the hearing, the trial court, after considering the relevant factors, generally granted the Association's request but reduced the amount from $24,171.60 to $24,086.10. On May 2, 2023, the trial court entered its final order awarding the Association $24,086.10 in attorney fees and costs, and providing that the award may be secured against Mitan's condominium unit by a statutory lien.

This appeal followed.[4]

## II. INJUNCTION

Mitan argues that ¶ 2 of the injunction entered by the trial court violates MCR 3.310(C)(2) because it is vague and overly broad, and it violates MCR 3.310(C)(3) because it incorporates by reference a set of documents attached to the injunction itself. We disagree.

"[A] trial court's decision to grant injunctive relief is reviewed for an abuse of discretion." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 32; 896 NW2d 39 (2016). "An abuse of discretion occurs when the court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 33-34 (quotation marks and citation omitted). "The interpretation and

---

[4] During oral argument in this Court, counsel represented that the condominium unit at issue has not yet been sold. Thus, we assume that aspects of this appeal directly involving that unit are not moot. See *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014).

application of court rules present a question of law that is reviewed de novo." *Sweet Air Inv, Inc v Kenney*, 275 Mich App 492, 496-497; 739 NW2d 656 (2007) (cleaned up).

Michigan courts have long recognized that the language of an injunction cannot be "vague and indefinite." See *Hansen v Facione*, 294 Mich 473, 476; 293 NW 723 (1940). See also *Detroit Bar Ass'n v Union Guardian Trust Co*, 282 Mich 216; 276 NW 365 (1937) ("We are not impressed with the claim of the respective parties that the portion of the decree now under consideration is too indefinite in that it does not in sufficient detail advise the parties of their respective rights and powers."). In this regard, MCR 3.310(C) provides as follows:

> An order granting an injunction or restraining order
>
> (1) must set forth the reasons for its issuance;
>
> (2) must be specific in terms;
>
> (3) must describe in reasonable detail, and not by reference to the complaint or other document, the acts restrained; and
>
> (4) is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

On appeal, Mitan challenges the elements listed in MCR 3.310(C)(2), "must be specific in terms," and MCR 3.310(C)(3), "must describe in reasonable detail, and not by reference to the complaint or other document, the acts restrained."

Paragraph 2 of the injunction does not violate MCR 3.310(C)(2). The language enjoining Mitan "from violating the terms and conditions of the Farmington Square Condominium Documents," when read in isolation, is quite broad because it seems to compel his compliance with each term of the master deed and bylaws. However, that language is immediately followed within the same sentence by the qualifier, "all applicable provisions of the Condominium Documents concerning leasing." Thus, when ¶ 2 is read as a whole and in the context of the overall injunction, Mitan is not enjoined from violating each term of the master deed and bylaws but, rather, only is enjoined from violating the terms "concerning leasing." This is sufficiently specific to satisfy MCR 3.310(C)(2), as well as the rule that injunctions cannot be "vague and indefinite." See *Hansen*, 294 Mich at 476.

With regard to MCR 3.310(C)(3), however, at first glance, Mitan's argument appears to have merit because ¶ 2 incorporates by reference "the Farmington Square Condominium Documents, attached as **Exhibit A** to this Judgment." That is, because MCR 3.310(C)(3) provides that the acts restrained in an injunction cannot be set forth "by reference to . . . other document," and because ¶ 2 of the injunction incorporates the condominium documents by reference, it is arguable that the injunction is void to that extent.

While we cannot identify any controlling or persuasive Michigan caselaw interpreting MCR 3.310(C)(3), federal caselaw[5] suggests that in these circumstances, relief is not warranted because the appellant, Mitan, clearly was aware of the terms of the condominium documents. In other words, because Mitan has personally litigated this case, he presumptively understands the terms of the condominium documents as they relate to his obligations as a co-owner and a landlord. See, e.g., *Group One Ltd, GTE GmbH*, 2023 WL 6845864 (ED NY, 2023) ("[T]he Second Circuit has held that where an injunction references extrinsic documents that the enjoined party is clearly aware of, the injunction does not violate Rule 65(d)."); *Ren Air Racing Ass'n v McCord*, 452 F3d 1126, 1133 (CA 9, 2006) ("[I]ncorporation by reference should be the rare exception rather than the rule, and district courts should be particularly cautious where the injunctive order is issued at the outset of litigation, before the receiving party has acquired a context for understanding the referenced document and the subject matter of the dispute.").[6] These cases are consistent with the general principle that "an error or defect in anything done or omitted by the court or by the parties is not ground . . . for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice." MCR 2.613(A). Thus, because Mitan is aware of the terms of the condominium documents, and actually commenced litigation regarding those terms, it would not be "inconsistent with substantial justice" to decline to set aside or modify the terms of the injunction. See *id*.

Accordingly, we conclude that ¶ 2 of the injunction does not violate MCR 3.310(C)(2) because it is sufficiently specific and, to the extent that ¶ 2 violates MCR 3.310(C)(3) because it incorporates by reference the condominium documents, any error is harmless under MCR 2.613(A) because Mitan is aware of the terms of those documents.[7]

### III.  MITAN'S MOTION FOR SUMMARY DISPOSITION

---

[5] Fed R Civ P 65(d)(1)(C) provides that an injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." This provision is substantively identical to MCR 3.310(C)(3), and this Court may consider federal precedent discussing a federal analog to state law for its persuasive value. See *Michalski v Reuven Bar Levav*, 463 Mich 723, 733 n 13; 625 NW2d 754 (2001).

[6] Some circuits "strictly construe[]" Fed R Civ P 65(d) to completely prohibit all incorporation by reference. See *Consumers Gas & Oil, Inc v Farmland Industries, Inc*, 84 F3d 367, 371 (CA 10, 1996). However, according to 11A Federal Practice and Procedure Charles A. Wright, Arthur R. Miller & Mary Kay Kane § 2955, "[i]t is noteworthy that most courts that have mentioned the third requirement of Rule 65(d)(1) have done so in cases in which reference has been made in the injunction to outside documents." In this case, the condominium documents were attached to, and included with, the injunction itself.

[7] Mitan observes that the documents attached to the injunction include six pages of additional regulations that were not included in the original bylaws. However, as the Association explains on appeal, Article VI, Section 9 of the bylaws allows the Association to enact additional regulations beyond those set forth in the original bylaws. Those additional regulations properly are considered part of the "condominium documents." See MCL 559.103(10).

Mitan raises four separate challenges to the instant case initiated by the Association, and a separate fifth challenge to a particular provision in the injunction. None of these challenges have merit.

"A trial court's grant of summary disposition is reviewed de novo." *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006). "A motion under MCR 2.116(C)(10) . . . tests the factual sufficiency of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (emphasis omitted). "When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. This Court also reviews de novo the application of res judicata, *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014), as well as questions of statutory interpretation, *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009).

## A. RES JUDICATA

Mitan first argues that the instant case, which was initiated by the Association in December 2020 and continued through its first amended complaint in August 2021, is barred by res judicata because the 2018 proceedings were ongoing at the time those complaints were filed. This issue is waived because it was not raised before or addressed by the trial court. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227-228; 964 NW2d 809 (2020). Nonetheless, it is meritless.

Our Supreme Court has described the doctrine of res judicata as follows:

> The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*Adair v Mich*, 470 Mich 105, 121; 680 NW2d 386 (2004) (internal citation omitted).]

Res judicata does not apply to bar the instant case. The 2018 proceedings were not final when the Association filed its December 2020 complaint or its August 2021 first amended complaint in the instant case. Rather, the 2018 proceedings were final, at the earliest, in September 2022, when the trial court entered its final order in those proceedings. See *Kosiel v Arrow Liquors Corp*, 446 Mich 374, 381; 521 NW2d 531 (1994) ("To be accorded the conclusive effect of res judicata, the judgment must ordinarily be a firm and stable one, the last word of the rendering court.") (cleaned up). That is, because the 2018 proceedings were ongoing when the December 2020 and the August 2021 respective complaints were filed in the instant case, and the 2018 proceedings did not become final until September 2022 or later, the instant case is not barred by a previous final decision.

## B. MCL 600.3105(2)

Mitan argues that the instant case is barred by the "one-action rule" of MCL 600.3105(2), which essentially provides that after a mortgage or land-contract foreclosure complaint has been filed, a separate proceeding for recovery of the debt cannot be maintained. Mitan reasons that because the 2018 proceedings sought foreclosure, the instant case violates MCL 600.3105(2).

MCL 600.3105(2) provides as follows:

> After a complaint has been filed to foreclose a mortgage on real estate or land contract, while it is pending, and after a judgment has been rendered upon it, no separate proceeding shall be had for the recovery of the debt secured by the mortgage, or any part of it, unless authorized by the court.

This statute is inapplicable to this case. By its plain terms, MCL 600.3105(2) applies to a complaint "to foreclose a mortgage on real estate or land contract." Indeed, Chapter 31 of the Revised Judicature Act applies to actions "to foreclose mortgages of real estate and land contracts." See MCL 600.3101. The 2018 proceedings, in contrast, involved a complaint to foreclose on a condominium-association lien under the Condominium Act, MCL 559.101 *et seq*. Such a lien is distinct from a mortgage or land contract. See generally, *Coventry Parkhomes Condominium Ass'n v Fed Nat'l Mortg Ass'n*, 298 Mich App 252, 258-260; 827 NW2d 379 (2012) (recognizing the differences between a mortgage lien and a condominium-association lien). Thus, regardless of the fact that the 2018 proceedings involved a complaint to foreclose on a lien, MCL 600.3105(2) does not apply here because the lien involved in the 2018 proceedings is not the type of lien contemplated by MCL 600.3105(2).

## C. MCL 559.212(5)(a)

Mitan argues that aspects of the instant case are barred by MCL 559.212(5)(a), as that statute provides that the Association had a legal remedy in the district court against the unknown tenants and occupants—specifically, summary proceedings for eviction. See MCL 600.5701(a). According to Mitan, because the Association could have pursued summary proceedings in the district court under MCL 559.212(5)(a) against the unknown tenants and occupants, it was precluded from filing the instant case in the trial court against the unknown tenants and occupants.[8]

MCL 559.212(5) provides as follows:

> When a co-owner is in arrearage to the association of co-owners for assessments, the association of co-owners may give written notice of the arrearage to a tenant occupying a co-owner's condominium unit under a lease or rental agreement, and the tenant, after receiving the notice, shall deduct from rental payments due the co-owner the arrearage and future assessments as they fall due and pay them to the association of co-owners. The deduction does not constitute a breach of the rental agreement or lease by the tenant. If the tenant, after being

---

[8] It is debatable whether Mitan, as opposed to the unknown tenants and occupants themselves, is the proper party to maintain this argument.

notified, fails or refuses to remit rent otherwise due the co-owner to the association of co-owners, then the association of co-owners may do the following:

> (a) Issue a statutory notice to quit for non-payment of rent to the tenant and shall have the right to enforce that notice by summary proceeding.

> (b) Initiate proceedings pursuant to subsection (4)(b).

MCL 559.212(4)(b), in turn, provides as follows:

> If the association of co-owners determines that the tenant or nonco-owner occupant failed to comply with the conditions of the condominium documents, the association of co-owners shall take the following action:

> * * *

> (b) If after 15 days the association of co-owners believes that the alleged breach is not cured or may be repeated, it may institute on its behalf or derivatively by the co-owners on behalf of the association of co-owners, if it is under the control of the developer, an action for both eviction against the tenant or nonco-owner occupant and, simultaneously, for money damages against the co-owner and tenant or nonco-owner occupant for breach of the conditions of the condominium documents. The relief provided for in this section may be by summary proceeding. The association of co-owners may hold both the tenant and the co-owner liable for any damages to the general common elements caused by the co-owner or tenant in connection with the condominium unit or condominium project.

Simply put, MCL 559.212(5) offers the Association two options under these circumstances, either seeking to evict the unknown tenants and occupants through a summary proceeding, see MCL 559.212(5)(a), or initiating proceedings under MCL 559.212(4)(b), see MCL 559.212(5)(b). See also *Ewin v Burnham*, 272 Mich App 253, 257; 728 NW2d 463 (2006) ("The word 'may' is permissive."). MCL 559.212(4)(b) explains that such proceedings are "an action for both eviction against the tenant or nonco-owner occupant and, simultaneously, for money damages against the co-owner and tenant or nonco-owner occupant for breach of the conditions of the condominium documents." In other words, the Association had the option under MCL 559.212(4)(b) for maintaining an action under ordinary jurisdiction rules. It properly did so here, as the circuit court generally has concurrent jurisdiction with the district court in equitable matters. See MCL 600.8302(1).

## D. MCL 450.1501

Mitan argues that the instant case is invalid because it is barred by MCL 450.1501 of the Business Corporation Act, MCL 450.1101 *et seq.*, which provides that "[t]he business and affairs of a corporation shall be managed by or under the direction of its board[.]" Mitan reasons that because the Association's board of directors did not vote to authorize the filing of the instant case, the case violates MCL 450.1501.

MCL 450.1501 provides as follows:

The business and affairs of a corporation shall be managed by or under the direction of its board, except as otherwise provided in this act or in its articles of incorporation. A director need not be a shareholder of the corporation unless the articles or bylaws so require. The articles or bylaws may prescribe qualifications for directors.

Initially, we strongly doubt that a condominium association is a "corporation" governed by the Business Corporation Act, such that its board of directors is required to comply with the Business Corporation Act. Rather, the question in similar condominium cases generally is whether the board of directors violated the Condominium Act or the condominium documents, such as the bylaws. See, e.g., *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636; 954 NW2d 231 (2020).

In any event, MCL 450.1501 does not provide that a corporation's board of directors must directly manage the "business and affairs" of the corporation. Rather, it is well-established that corporations may act through agents. See *Garey v Kelvinator Corp*, 279 Mich 174, 191; 271 NW 723 (1937). Here, the record indicates that the Association's board of directors acted through a management company, which authorized the filing of the instant case. Moreover, Article X, Section 5 of the bylaws provides that "[t]he Board of Directors may employ for the Association a professional management agent . . . to perform such duties and services as the Board shall authorize[.]" Mitan has cited no authority indicating that this arrangement or agency relationship is improper.

## E. FUTURE COSTS

Finally, Mitan argues that ¶ 7 of the injunction, which authorizes a potential future award of costs and damages to enforce the injunction, is invalid. Mitan reasons that a separate proceeding would be necessary to award such costs and damages, see MCR 3.606 and MCL 600.1715(2),[9] and that a party may not receive contract damages for hypothetical damages, see *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017).

Paragraph 7 of the injunction provides as follows:

Plaintiff is further entitled to post-judgment attorney's fees, court costs, and damages incurred to enforce this Judgment and Default Judgment.

There is nothing improper or unusual about this provision. Michigan law has long recognized that an individual who violates an injunction may be liable for damages incurred as a result of that violation. See, e.g., *Chapel v Hull*, 60 Mich 167, 175; 26 NW 874 (1886) ("The course pursued in the contempt proceedings was authorized by the statute. The amount decreed to be paid was not by way of fine, but to compensate the complainants for the actual injury or loss occasioned by the violation of the injunction . . . ."). Paragraph 7 simply reiterates the Association's statutory right, currently codified by MCL 600.1721, to receive damages from Mitan

---

[9] These two provisions govern contempt proceedings.

in the event that Mitan violates the injunction.[10]  See MCL 600.1721 ("If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant.").  Contrary to Mitan's argument, ¶ 7 does not address whether such damages must be sought in the same or a separate proceeding, nor does it award the Association for hypothetical damages.  Relief is not warranted.

## IV.  ATTORNEY FEES AND COSTS

Mitan raises four separate arguments challenging the $24,086.10 amount awarded by the trial court for attorney fees and costs.  We agree with Mitan's first argument that the award should not include $287 in paralegal fees, so we remand this case to the trial court to reduce the award by that amount.  However, we also agree with the Association that it possibly is entitled to attorney fees and costs incurred in defending against this appeal, so we remand this case to the trial court for that additional reason as well.

Generally, this Court reviews a trial court's award of attorney fees for an abuse of discretion.  See *Windemere Commons I Ass'n v O'Brien*, 269 Mich App 681, 682; 713 NW2d 814 (2006).  However, "[a] trial court's decision to grant or deny a motion for attorney fees presents a mixed question of fact and law."  *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689; 828 NW2d 400 (2012).  "This Court reviews the trial court's findings of fact for clear error, and questions of law de novo."  *Id*. at 690.  "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made."  *Id*. (quotation marks and citation omitted).  Interpretation of condominium bylaws is reviewed de novo.  *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015).

"As a general rule, attorney fees are not recoverable as an element of costs or damages absent an express legal exception."  *Fleet Business Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 589; 735 NW2d 644 (2007).  "An exception exists where attorney fees are provided by contract of the parties."  *Id*. (quotation marks and citations omitted).  "When validly promulgated, an entity's bylaws or similar governing instrument will constitute a binding contractual agreement between the entity and its members."  *Conlin v Upton*, 313 Mich App 243, 255; 881 NW2d 511 (2015).  Attorney fees also may be awarded by statute.  *Burnside v State Farm Fire & Case Co*, 208 Mich App 422, 426-427; 528 NW2d 749 (1995).

Here, the trial court was authorized to award the Association its requested attorney fees and costs under Article XVIII, Section 2 of the bylaws, as well as MCL 559.206(b).  Mitan does not dispute that either, or both, of these provisions are applicable in this case.  That is, he does not dispute that the Association has a right to recover its reasonable attorney fees and costs under the bylaws or statute.  Nor does he dispute the trial court's overall consideration of the *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008), factors.  Instead, he raises the following four challenges to the $24,086.10 amount awarded by the trial court: (1) the award included a $287 amount for paralegal fees, notwithstanding that there was no documentary evidence indicating that the

---

[10] Mitan does not argue that the provision concerning attorney fees is invalid.

paralegal satisfied MCR 2.626 and Article I, Section 6 of the Bylaws of the State Bar of Michigan; (2) the $24,086.10 amount was excessive in a case involving a $785 per month lease; (3) the $24,086.10 amount includes more than $4,000 of attorney fees that were incurred before August 24, 2021, when Mitan first became a party to this case; and (4) the trial court agreed with Mitan at the evidentiary hearing that the Association's requested fees should be reduced by $85.50, yet it charged him for $2,153.50 in fees related to the evidentiary hearing itself. Only the first challenge has merit.

Concerning the first challenge, MCR 2.626 states that "[a]n award of attorney fees may include an award for the time and labor of any legal assistant who contributed nonclerical, legal support under the supervision of an attorney, provided the legal assistant meets the criteria set forth in Article 1, § 6 of the Bylaws of the State Bar of Michigan." Article 1, § 6 of the Bylaws of the State Bar of Michigan, in turn, lists a series of specific qualifications for a paralegal. When the trial court does not receive evidence indicating that the paralegal at issue satisfies MCR 2.626 or the state-bar provision, fees for that paralegal may not be awarded. See *Wexford Parkhomes Condominium Assoc v Kajma*, unpublished per curiam opinion of the Court of Appeals, issued February 6, 2020 (Docket No. 345611) (concluding that paralegal fees were not awardable because "[p]laintiff did not attach any documentary evidence to either its motion for summary disposition or its motion for reconsideration to support its assertions that Duddles met the requirements of MCR 2.626 and Article I, Section 6 of the Bylaws of the State Bar of Michigan").[11]

Here, the record does not reflect any evidence indicating that the paralegal work performed by the Association's counsel was performed by a paralegal satisfying MCR 2.626 or Article 1, § 6 of the Bylaws of the State Bar of Michigan. The Association does not argue otherwise on appeal. Therefore, because the record does not contain such evidence, we reverse the trial court to the extent that it awarded paralegal fees to the Association, and remand to that court to reduce the fees award by that amount.

Concerning the second challenge, "the amount involved and the results obtained" is a factor that the trial court must consider when determining an award of reasonable attorney fees. *Smith*, 481 Mich at 530 (opinion by TAYLOR, C.J.). The trial court in this case, when stating its opinion on the record, acknowledged this factor but indicated that this factor was outweighed by the fact that the case was "highly litigious." This was not clearly erroneous. The case was litigated for nearly three years and required the filing of numerous motions and other documents by the Association's counsel to adequately respond to the myriad issues raised by Mitan throughout the proceedings. In other words, while it is true that the case initiated by the Association was relatively straightforward, it eventually became complex and substantial, primarily because of Mitan's own conduct in expanding the scope of the proceedings. Under these circumstances, the fact that this case originally involved a relatively small monthly lease does not render the ultimate attorney-fee award improper.

---

[11] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017).

Concerning the third challenge, it is true that the $24,086.10 award includes attorney fees that were incurred before August 24, 2021, when Mitan first became a party to this case by the first amended complaint filed by the Association. However, there is no language in Article XVIII, Section 2 of the bylaws or MCL 559.206(b) limiting the award of attorney fees and costs to those incurred only when the co-owner defendant was a party to the case. Rather, the bylaws provision states that the Association may "recover the costs of the proceeding," and MCL 559.206(b) similarly states that the Association may "recover the costs of the proceeding." Moreover, while the trial court arguably could have exercised its discretion to adjust the award downward to reflect the fact that Mitan was not a party to the case before August 2021, see *Smith*, 481 Mich at 530 (opinion by TAYLOR, C.J.), the fact that it did not do so here was not erroneous or an abuse of discretion in light of the fact that Mitan was personally involved in both the underlying circumstances giving rise to this case and the legal proceedings themselves. Moreover, Mitan does not cite any authority for the proposition that the trial court could not include attorney fees that were incurred before he became a party. Thus, relief is not warranted.

Concerning the fourth challenge, the fact that Mitan obtained a minimal downward adjustment after a successful objection does not support his argument that the fees incurred in relation to the evidentiary hearing should be waived. Mitan raised a few other successful arguments throughout this case, yet he does not suggest that attorney fees incurred to respond to those arguments cannot be awarded. Mitan has presented no authority, and we are not aware of any authority, to suggest that an award of reasonable attorney fees must be adjusted downward in recognition of each successful argument advanced throughout the proceedings by the losing party. None of the *Smith* factors suggest that the trial court is required to itemize and separate fees that were incurred in such a manner. Thus, Mitan's argument is meritless.[12]

Finally, the Association requests that this Court remand to the trial court to award fees and costs incurred on appeal. MCL 559.206(b) provides that the Association, if successful "[i]n a proceeding arising because of an alleged default by a co-owner," may recover reasonable attorney fees and costs as determined by the court. Similarly, Article XVIII, Section 2 of the bylaws provides that the Association may recover "[i]n any proceeding arising because of an alleged default by any Co-owner." This Court, in at least two unpublished cases, has held that such language entitles a condominium association to recover appellate attorney fees as determined by the court. See *Dearborn West Village Condominium Assoc v Makki*, unpublished per curiam opinion of the Court of Appeals, issued January 3, 2019 (Docket No. 340166); *Copperfield Villas Assoc v Tuer*, unpublished per curiam opinion of the Court of Appeals, issued June 23, 2022 (Docket No. 356494). In *Dearborn West*, for example, this Court explained:

> The critical phrases in the above-quoted provision are: (1) "[i]n any proceeding" (2) "arising because of an alleged default by a Co-owner" and (3) "such reasonable attorney's fees . . . as may be determined by the court." There is no dispute that the current appeal is a "proceeding." See *Black's Law Dictionary* (10th ed.), p. 1398 (defining "proceeding" to include "the taking of an appeal or

---

[12] Mitan does not argue that the trial court lacked the authority as a general proposition to award attorney fees incurred to establish entitlement to attorney fees. Thus, we do not address that issue.

-14-

writ of error"). Further, the current appeal arose "because of an alleged default by [a] Co-owner" because it arose as defendant's challenge to the trial court's grant of summary disposition to plaintiff on its claim that defendant was in default of the condominium documents. Next, the phrase, "such reasonable attorney's fees . . . as may be determined by the court[,]" does not expressly include or exclude appellate fees. However, the fact that "reasonable attorney fees" are recoverable "in *any* proceeding arising because of an alleged default by any Co-owner" weighs in favor of interpreting the provision to entitle plaintiff to attorney fees incurred in an appellate proceeding to resolve a defendant's alleged default of the condominium documents. [*Dearborn West*, unpub op at 5.]

Taking these unpublished opinions as persuasive, see *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017), the trial court here has the discretion under the bylaws and statute to award the Association's counsel its appellate attorney fees and costs that were incurred to defend against Mitan's appeal. Therefore, as part of the remand to the trial court, that court should consider whether and to what extent, if at all, the Association's counsel should be awarded appellate attorney fees and costs.

## V. COUNTER-DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

Mitan challenges the dismissal of two counts of his nine-count first amended counterclaim: Count IV, which concerns the denial of access to a utility room, and Count VI, which concerns a lien placed against the condominium complex by a renovation company for about a year. We conclude that the trial court correctly dismissed those two claims.

With regard to Count IV, MCL 559.163 provides that "[e]ach co-owner has an exclusive right to his condominium unit and has such rights to share with other co-owners the common elements of the condominium project as are designated by the master deed." Moreover, Article IV(10) of the master deed provides that "[a]ll utility installations and the areas in which same are located when they service multiple units, including adjacent areas for entry for repair, maintenance and service" are classified as "general common elements." According to Mitan, when the Association denied him access to "building C . . . for AT&T" in November 2020, it violated the master deed and MCL 559.163 because that utility room was a common element.

Initially, it is debatable whether MCL 559.163 confers a statutory right on co-owners to have direct access to and use of all common elements, as Mitan assumes, as opposed to merely conferring an undivided property interest on co-owners. See *Janini v London Townhouses Condo Assoc*, 514 Mich 86, 99; ___ NW3d ___ (2024) ("[W]hile condominium co-owners have an undivided interest in the common elements, MCL 559.137(1); see also MCL 559.163, that interest does not necessarily amount to *control* over the common elements, see MCL 559.147(1) . . . ."). Regardless, the trial court correctly dismissed Count IV for two reasons. First, while not directly argued by the counter-defendants on appeal, Mitan has failed to show damages. That is, Mitan did not suggest in the trial court, and does not suggest on appeal, how the Association's single denial of access to the utility room caused him any damages. He does not, for example, assert that he was denied home Internet for any period of time. Without a showing of damages, Count IV must fail. See *Van Buren Charter Twp*, 319 Mich App at 550-551.

Second, as the counter-defendants argue, Mitan was not a co-owner when he apparently was denied access to the utility room from November 2020 to January 2021, as he did not transfer title to himself in his personal capacity until March 2021. Thus, even if the Association, acting through the counter-defendants, improperly denied Mitan access to the utility room from November 2020 to January 2021, Mitan personally was not a party to the bylaws at that time. Consequently, he cannot maintain an action in his personal capacity for breach of the bylaws in that regard. See *Barclae v Zarb*, 300 Mich App 445, 483; 834 NW2d 100 (2013) (discussing real party in interest).

Next, Count VI, Article X, Section 4(g) of the bylaws provides as follows:

> Other Duties. In addition to the foregoing duties imposed by these Bylaws, or any further duties which may be imposed by resolution of the members of the Association, the Association shall be responsible specifically for the following:
>
> * * *
>
> (g) To borrow money and issue evidences of indebtedness in furtherance of any or all of the purposes of the Association, and to secure the same by mortgage, pledge, or other lien on property owned by the Association; provided, however, that any such action shall also be approved by affirmative vote of 75% of all of the members of the Association in number and in value.

Count VI is meritless because, contrary to Mitan's argument, the Association did not violate this provision of the bylaws. For the purposes of this case, this provision only prohibits "borrow[ing] money" or "issu[ing] evidences of indebtedness" to the extent that doing so is secured by a lien against condominium property. The Association did not borrow money or issue evidences of indebtedness to the renovation company. Rather, the Association agreed to pay a certain amount of money to the renovation company and, when it failed to do so on a timely basis, the renovation company filed a "Claim of Lien for Contractor, Subcontractor, or Supplier" against the condominium property. See *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016) (discussing contractor liens). The evidence before us indicates that the lien was filed unilaterally by the renovation company and was not part of any plan for the Association to either borrow money or issue debt. Further, given that the lien was discharged about a year later, Mitan has not shown or argued that he suffered damages. For this additional reason, this issue is meritless. See *Van Buren Charter Twp*, 319 Mich App at 550-551.

## VI. CONCLUSION

We affirm the trial court in nearly all respects, but remand to that court to reduce the fees award by the amount awarded for paralegal fees and to possibly increase the award by the amount of fees and costs incurred for defending against this appeal. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Michael J. Riordan
/s/ Brock A. Swartzle

-16-